**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff*,<br><br>v.<br><br>ERIC D. PEARSON,<br><br>*Defendants*. | Case No. 97-10026-02-AJP |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Defendant Eric D. Pearson's Motion to Reduce Sentence under 18 U.S.C. § 3582(c)(1)(A) (Doc. 345). He states that extraordinary and compelling circumstances warrant his early release from prison. The Government opposes Defendant's motion. For the reasons stated in more detail below, the Court denies Defendant's motion.

## I. Factual and Procedural Background

On June 5, 1997, Defendant was convicted by jury of one count of conspiracy to commit Hobbs Act robbery, one count of Hobbs Act robbery, and one count of the use of a firearm during and relation to a crime of violence resulting in murder. On September 3, 1997, Judge Monti L. Belot sentenced Defendant to 240 months imprisonment on two of the counts and life imprisonment without possibility of release on the third count, with the sentences for each count to run concurrently

with each other. On February 22, 2000, the Tenth Circuit Court of Appeals affirmed Defendant's conviction and sentence. *United States v. Pearson*, 203 F.3d 1243 (10th Cir. 2000).

The following facts of the underlying offense are taken from the Tenth Circuit's recitation in its decision on Defendant's appeal. On the night of February 17, 1997, Dominic Pearson (Defendant's cousin) and Courtney Martin robbed a Mr. Goodcents store in Wichita, Kansas. Martin wielded a firearm, and while the two men stole money from the store, the handgun accidentally discharged, striking Amie Montgomery, a nineteen-year-old shift lead, and killing her. Pearson and Martin were arrested, as were several other individuals in connection with the robbery. One of those individuals was Defendant. Another individual was Deborah Meyer, another employee of Mr. Goodcents, and Defendant's girlfriend. At Defendant's trial, Meyer testified that Defendant "had discussed with her various plans to take money from Mr. Goodcents." *Id.* at 1249. Ms. Meyer provided Defendant with details about the store that would aid in a robbery. According to Meyer, after these conversations, Defendant and his co-conspirators had the intent to rob Mr. Goodcents.

Defendants attempted to complete the robbery one day, but because of police presence around Mr. Goodcents, they declined to do so. But Defendant and his co-conspirators continued to plan the robbery until the date of the events described above, February 17, 1997. Meyer and another employee of Mr. Goodcents, Gracie

Ginyard, discussed that Defendant was going to stage a robbery of Mr. Goodcents. Ms. Ginyard, while initially willing to participate in the scheme, later refused.

Martin testified that on the night of the robbery, he and Dominic Pearson entered the Mr. Goodcents while Defendant waited in the car. Defendant did not enter the store as he feared he would be recognized. This left the robbery to Martin and Dominic Pearson who had, before committing the robbery, been driving around smoking marijuana. Martin was holding the gun when it discharged and killed Ms. Montgomery. Defendant, however, was the one who supplied the gun and the clothing for Martin and Dominic Pearson to wear. Defendant also drove them away after the robbery.

Once trial began, Defendant engaged in tactics that further impugned his character. He authored a letter to one of his former girlfriends that encouraged her to perjure herself. She refused. The court reporter from trial told the district judge that she had seen Defendant make "threatening gestures to a witness." *Id.* at 1252. Additionally, the court noted that Defendant "smirked through the trial as if it were 'entertainment.'" *Id.* As noted above, the jury convicted Defendant on all counts, and Judge Belot sentenced Defendant to life in prison.

After nearly thirty years in federal prison, Defendant, represented by counsel, filed a Motion to Reduce Sentence.[1] He asserts that, collectively, (1) his rehabilitation over the past 28 years while incarcerated, (2) his youth (age 22) at the

---

[1] This case was previously assigned to Judge Broomes and was reassigned to the undersigned in July 2026.

time he committed the offenses and the changes in law with respect to youth and culpability, and (3) the change in the sentencing guidelines from mandatory to advisory constitute an extraordinary and compelling reason warranting his early release from prison. The Government opposes Defendant's motion.

## II. Legal Standard

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), allows a defendant to seek early release from prison provided certain conditions are met. First, a motion for compassionate release may only be filed if: (1) "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf;" or (2) 30 days have elapsed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). In the Tenth Circuit, exhaustion is a mandatory claim-processing rule. *United States v. Hemmelgarn*, 15 F.4th 1027, 1030–31 (10th Cir. 2021).

If a defendant satisfies the exhaustion requirement, district courts use a three-part test when deciding a defendant's motion. *United States v. Maumau*, 993 F.3d 821, 831 (10th Cir. 2021). This test requires the Court to consider (1) whether "extraordinary and compelling reasons" warrant the sentence reduction, (2) whether the "reduction is consistent with applicable policy statements issued by the Sentencing Commission," and (3) whether any reduction is consistent with the applicable sentencing factors set forth in 18 U.S.C. § 3553(a). *Id.* If the Court denies the motion because the defendant fails to meet one of the prerequisites, it may do so

without addressing all three factors. *United States v. Hald*, 8 F.4th 932, 942–43 (10th Cir. 2021) (explicitly stating that a district court can choose which order to consider the three steps, and "[i]f the most convenient way for the district court to dispose of a motion for compassionate release is to reject it for failure to satisfy one of the steps, we see no benefit in requiring it to make the useless gesture of determining whether one of the other steps is satisfied."). If, however, the Court grants the motion, the Court must address all steps. *United States v. McGee*, 992 F.3d 1035, 1043 (10th Cir. 2021) (citation omitted) (abrogated in part by *Rutherford v. United States*, 608 U.S. ---, 146 S. Ct. 1320, 1328 (2026)).

## III. Analysis

Defendant requests early release from prison stating that the following circumstances, in combination, constitute an extraordinary and compelling reason: (1) rehabilitation; (2) his youth at the time of the offense and the changes in law with respect to youth and culpability; and (3) his mandatory-guideline sentence of life imprisonment would no longer be mandatory. The Government contends that release is not warranted. The Court finds that Defendant's reasons, alone and in combination, do not demonstrate an extraordinary and compelling reason warranting a sentence reduction.

### A. Exhaustion

Defendant submitted a compassionate release request to the Warden of his facility on June 12, 2025. The government concedes that Defendant meets the exhaustion requirement. Thus, the Court finds that Defendant has satisfied the

exhaustion requirement in § 3582(c) and will proceed to the merits of Defendant's motion.

**B. Extraordinary and Compelling Reasons**

When determining whether a defendant presents an extraordinary and compelling reason warranting a sentence reduction, a district court has discretion to determine whether Defendant's reason reaches the level of extraordinary and compelling. *See Maumau*, 992 F.3d at 831. That authority is circumscribed by whether such reduction is "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1); *see also Maumau*, 993 F.3d at 831.

The Sentencing Commission's policy statement is now included within the text of the guidelines. *See* U.S.S.G. § 1B1.13. Some of the circumstances that may be relevant when deciding if a defendant presents an extraordinary and compelling reason for a sentence reduction include: (1) the medical circumstances of the defendant; (2) the age of the defendant and a serious deterioration in health; (3) the family circumstances of the defendant; (4) the defendant was the victim of sexual or physical abuse while incarcerated by or at the direction of an employee of the correctional facility; and (5) any other circumstances or combination of circumstances that are similar in gravity to the first four circumstances. § 1B1.13(b)(1)-(5). In addition, an unusually long sentence may be a consideration but only if there has been a change in the law; the defendant has served at least ten years of the unusually long sentence; and the change in law would "produce a gross

disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed." § 1B1.13(b)(6).

In this case, Defendant requests a sentence reduction based on (1) his rehabilitation while incarcerated, (2) his relative youth (age 22) at the time he committed the offenses and the changes in the law with respect to youth and culpability, and (3) the changes in sentencing guidelines that would not mandate a life sentence under the current sentencing scheme. He contends that the reduction is consistent with either § 1B1.13(b)(5), (b)(6), or both. The Court will address Defendant's contentions and undertakes this analysis cognizant of the recent decision by the United States Supreme Court in *Rutherford v. United States*. In that decision, the Supreme Court noted that "[t]he term 'extraordinary' means 'most unusual,' 'far from common,' or 'having little or no precedent.'" *Id.* at 1330 (citations omitted). And the term "compelling" means "tending to convince or convert by or as if by forcefulness of evidence." *Id.* (quotation marks and citation omitted).

*1. Defendant's Rehabilitation*

Defendant has been in prison for approximately 28 years. In those years, Defendant began and completed the Challenge Program, an intensive 500-hour mental-health and substance-abuse program. "This Court has previously recognized that completion of this program is 'particularly noteworthy.'" *United States v. Kayarath*, No. 94-10128-02-JWB, 2024 WL 914059, at *2 (D. Kan. Mar. 4, 2024) (quoting *United States v. Espino*, No. 03-20051-08-JWL, 2022 WL 4465096, at *4 (D. Kan. Sept. 26, 2022)). After completing the program, he mentored others. Staff at

prison have also worked closely with Defendant and have recognized his progress and reform over the years he has been in prison. Defendant includes numerous letters that speak highly of Defendant's character, including a letter from an Associate Warden who states that Defendant's time spent in prison has been positive. This Associate Warden would recommend consideration for compassionate release based on the character Defendant has demonstrated. Defendant's rehabilitation in prison is commendable, particularly because he had no extrinsic motivation to earn good-time credit as he was serving a life imprisonment sentence. *See Espino*, 2022 WL 4465096, at *4 (finding that an exemplary prison record was rare when the defendant was sentenced to life in prison and thus had no incentive for good behavior because it could not result in early release) (citations omitted). However, rehabilitation, standing alone, is insufficient to warrant compassionate release. 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13(d). Thus, the Court must look at the other factors Defendant presents.

*2. Defendant's Youth and Changes in the Law/Sentencing Guidelines*

The Court will consider Defendant's next two arguments for early release together as they relate to each other. These include (1) Defendant's relative youth (age 22) at the time he committed the offenses and the changes in the law with respect to youth and culpability, and (2) the changes from mandatory sentencing guidelines to advisory sentencing guidelines. The Court finds that Defendant's asserted bases are not extraordinary and compelling reasons and do not rise to the type of circumstances contemplated by § 1B1.13(b)(5) or § 1B1.13(b)(6).

a. Youth, Culpability, and the Law

Defendant first asserts that over the past 30 years, the law has changed as to the recognition of youth and culpability under the law. Defendant discusses the policy statement in U.S.S.G. § 5H1.1, and he also references case law.

As to U.S.S.G. § 5H1.1, it has undergone several revisions. When Defendant was sentenced in 1997, it explicitly stated that youthfulness was not to be considered in sentencing. *See* U.S.S.G. § 5H1.1 (1997) (stating that "[a]ge (including youth) is not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range."). Thus, Defendant's age could not be a factor.

As Defendant points out, in 2024, the policy statement stated the opposite in that it provided that "[a] downward departure . . . may be warranted due to the defendant's youthfulness at the time of the offense or prior offenses." U.S.S.G. § 5H1.1 (2024); *see also* App. C, amend. 829 (Nov. 2024). The Sentencing Commission's 2024 policy statement also expressly recognized that "[c]ertain risk factors may affect a youthful individual's development into the mid-20's and contribute to involvement in criminal justice systems, including environment, adverse childhood experiences, substance use, lack of educational opportunities, and familial relationships." *See* § 5H1.1 (2024). Thus, a defendant's age could be a consideration in sentencing when U.S.S.G. 5H1.1 was enacted in 2024.

However, since the filing of Defendant's motion,[2] the Sentencing Commission once again revised U.S.S.G. § 5H1.1 and deleted it entirely in November 2025. *See* U.S.S.G. App. C, amend. 836 (Nov. 2025); *see also United States v. Smith*, 177 F.4th 1166, 1169 (11th Cir. 2026) (noting that Amendment 836 deleted Amendment 829). Thus, now, there is no policy statement directing consideration of age one way or the other. Furthermore, even if Amendment 829 was still in effect, it "was never made retroactive, and therefore may not be considered." *Smith*, 177 F.4th at 1169 (citation omitted). Accordingly, the Court finds that the ever-changing policy statement in § 5H1.1, particularly since the policy statement in effect when Defendant committed the offense prohibited consideration of Defendant's age, does not support the finding of an extraordinary and compelling reason for sentence reduction.

Defendant also references decisions in which courts, including several District of Kansas cases, considered whether the defendant's age at the time of the offense impacted the defendant's culpability and thus constituted an extraordinary and compelling reason for release.[3] Defendant primarily highlights caselaw that acknowledges that there has been a shift toward recognizing that an individual's

---

[2] Defendant's motion was filed in August 2025.

[3] Generally, courts consider age in combination with other factors. *See Espino*, 2022 WL 4465096, at *4 (finding that "defendant's young age at the time of his offense, the length of the sentence he received, and overwhelming evidence of defendant's outstanding rehabilitation and reformation while in custody, in combination, constitute extraordinary and compelling reasons for a sentence reduction"); *Kayarath*, 2024 WL 914059, at *3–4 (finding that the defendant's "exemplary rehabilitation," lack of disciplinary incidents in prison, his young age of 18 at the time of the offense and the long term he had served in prison, "the law's recognition of the relationship between youth and culpability," and the defendant's family history were factors demonstrating an extraordinary and compelling reason for release).

brain is still developing into young adulthood. *See, e.g., Espino*, 2022 WL 4465096, at *2 (noting that "[i]n light of the timing of adolescent brain development, it is clear to the court that defendant, at just twenty years of age, necessarily possessed a lack of maturity and underdeveloped sense of responsibility that made him more likely to make egregious mistakes and engage in poor decisionmaking."); *see also Kayarath*, 2024 WL 914059, at *3 (noting that "the law has changed with respect to the law's recognition of the relationship between youth and culpability") (quotation marks and citation omitted).

The Court acknowledges the relationship between age and improved decision-making and that the law has become more cognizant of this factor over the past 30 years. Defendant, however, was 22 years old at the time this crime was committed. And although his age may have contributed to his poor decision-making, the Court cannot find that Defendant's relatively young age of 22, and the recognition by courts of age and poor decision-making, is an extraordinary or compelling reason for a sentence reduction.

Furthermore, the Court notes that at the time *Espino* was decided, there was no applicable policy statement in § 1B1.13 and thus "the court's discretion to consider whether any reasons are extraordinary and compelling [was] not constrained by § 1B1.13 or the Application Note to that policy statement." *Espino*, 2022 WL 4465096, at *4. Since the decision, the Sentencing Commission enacted an applicable policy statement, and the United States Supreme Court decided *Rutherford*. These two factors impact this Court's analysis as to whether

Defendant's reason regarding youth and culpability and changes in the law give rise to an extraordinary and compelling reason for release.

The Sentencing Commission's policy statement is included within the text of U.S.S.G. § 1B1.13, and Defendant contends that his reasons for release fit within § 1B1.13(b)(5). This section provides that an extraordinary and compelling reason may exist if "[t]he defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) though (4)." U.S.S.G. § 1B1.13(b)(5). The circumstances listed in paragraphs (1) through (4) include: (1) the defendant's serious or life-threatening medical conditions; (2) the defendant's advanced age and serious medical circumstances; (3) extenuating family circumstances of the defendant and the defendant is the only available caregiver; and (4) the defendant was the victim of physical or sexual abuse while in prison. § 1B1.13(b)(1)-(4). Thus, the question is whether Defendant's youth, and the changes in law to youth and culpability in sentencing, is a circumstance under § 1B1.13(b)(5) that is similar in gravity to the reasons set forth contemplated by § 1B1.13(b)(1)-(4). It is not.

The Ninth Circuit recently addressed whether a defendant's youth at the time of the offense qualified as an extraordinary and compelling reason for a sentence reduction under § 1B1.13(b)(5). *United States v. Bryant*, 144 F.4th 1119, 1126–29 (9th Cir. 2025).[4] The court found that the defendant's youth at the time of

[4] In *Bryant*, the defendant was 16 at the time of the offense and participated in a gang-related murder.

the offense was not similar to situations contemplated by 1B.1.13(b)(1)-(4) because those provisions "address[ed] situations where continued incarceration risks a defendant's health or safety, or would severely burden third parties unable to care for themselves." *Id.* at 1126 (internal citations omitted); *see also United States v. Hall*, 179 F.4th 504, 512 (6th Cir. 2026) (Nalbandian, concurring) (noting that the first four circumstances in § 1B1.13(b)(1)-(4) "each present serious danger, either to the prisoner or to someone else" and stating that "[a] prisoner's youth might evoke additional sympathy, but it doesn't come close to the 'gravity' of danger.").

In addition, the Ninth Circuit noted that "subsections (b)(1) through (4) share an important characteristic—they generally refer to circumstances that develop after sentencing," and a defendant's age is known at the time of the offense. *Bryant*, 144 F.4th at 1126–27. Thus, the court concluded that youth was "not 'similar in gravity' to the circumstances in § 1B1.13, which arise after a defendant has been sentenced." *Id.* at 1127. Finally, the court noted that "interpreting 'extraordinary and compelling' to include a defendant's youth would turn compassionate release into a loophole for reevaluating sentencing decisions without congressional authorization." *Id.*

This Court agrees that Defendant's youth and subsequent changes in sentencing law are not similar in gravity to the first four circumstances listed in 1B1.13(b)(1)-(4). Although the Court recognizes that the sentencing court could not consider Defendant's age at the time of his sentencing, there is no indication that

consideration of Defendant's age would change his sentence today.[5] In addition, the Supreme Court's recent decision is *Rutherford* emphasizes that "whether a prisoner is eligible depends on whether he can offer 'extraordinary and compelling' reasons that 'warrant' compassionate release," and "[t]his gatekeeping requirement is not . . . a free-for-all." *Rutherford*, 146 S. Ct. at 1333; *see also Hald*, 8 F.4th at 938, n. 4 ("The design of Congress in amending § 3582(c)(1)(A) was not to create an open season for resentencing . . . ."). "'[E]xtraordinary and compelling' reasons for compassionate release are those that are especially unusual and convincing." *Rutherford*, 146 S. Ct. at 1330. In sum, Defendant's relative youth and the law's recent consideration of youth as a sentencing factor is not an extraordinary or compelling reason and does not fall under § 1B1.13(b)(5).

b. Advisory Guideline Sentence instead of Mandatory Guideline Sentence

Defendant also contends that when he was sentenced in 1997, the sentencing guidelines were mandatory, and Defendant's guideline sentence was life imprisonment without possibility for release. In 2005, after the United States Supreme Court decided *United States v. Booker*, 543 U.S. 220 (2005), the sentencing guidelines became advisory. Thus, Defendant argues that the Court can now look at different factors, including his youth, when sentencing him rather than imposing the mandatory guideline sentence. This contention, however, also does not assist Defendant in establishing an extraordinary and compelling reason for release.

[5] As will be noted below, his guideline sentence would remain unchanged.

First, "a change in the nature of the guidelines as discretionary instead of mandatory would not be sufficient to warrant a reduction by itself." *Kayarath*, 2024 WL 914059, at *3.[6] And as even Defendant admits, a post-*Booker* advisory guideline sentence for Defendant is the same as the mandatory sentence previously imposed—life imprisonment without possibility for release. Thus, although a guideline sentence would now be advisory, there is no change in Defendant's guideline sentence. In addition, it is speculative that consideration of other factors would change the sentence imposed. *See, e.g., United States v. Davis*, 2025 WL 1000344, at *5 (10th Cir. 2025) (noting that the defendant's claim that "he would have received a downward departure at sentencing for his federal conviction" due to his youthfulness when committing his prior offenses was "too speculative and [did] not rise to the level of an extraordinary and compelling reason."); *see also United States v. Bryant*, CR 497-182, 2026 WL 1602923, at *2 (S.D. Ga. June 4, 2026) (noting that "any disparity occasioned by a comparison of pre-*Booker* and post-*Booker* sentencings is not only highly speculative but neither extraordinary nor compelling as those terms are defined and considered in *Rutherford*") (citing *Rutherford*, 146 S. Ct. at 1330–32).

Next, the Supreme Court's recent decision in *Rutherford* counsels against finding that a change in the guidelines from mandatory to advisory constitutes an

---

[6] The Court recognizes that in *Kayarath*, Judge Broomes went on to state that the change from mandatory guidelines to discretionary was insufficient by itself, but the change was relevant in that case "given that this change would allow the court to consider the sentencing factors which include Defendant's youth and background." *Kayarath*, 2024 WL 914059, at *3. The facts in *Kayarath* are distinguishable from the facts in this case as Defendant was a younger individual (18 years old) and had far less previous criminal history. Furthermore, the Court finds that the recent decision of *Rutherford* impacts the analysis in this case.

extraordinary and compelling reason for a sentence reduction. In *Rutherford*, the Supreme Court addressed a circuit split in which "[t]he Circuits remain divided over whether the disparity created by a nonretroactive change to sentencing law, like the [First Step] Act, can constitute an 'extraordinary and compelling reason[n]' that 'warrants[s] compassionate release." 146 S. Ct. at 1329–30. The Supreme Court resolved the split by concluding that a non-retroactive change to a sentencing law does not constitute an extraordinary or compelling reason for a sentence reduction. *Id.* at 1331.[7] Indeed, the court explicitly stated that "[w]hen Congress declines to make a sentencing amendment retroactive, the fact that a preamendment sentence is longer than it would have been postamendment is not an 'extraordinary and compelling reaso[n] that 'warrant[s]' a sentence reduction." *Id.* at 1330 (alteration in original) (citing 18 U.S.C. § 3582(c)(1)(A)(i)). The Supreme Court found that the Sentencing Commission's policy statement in § 1B1.13(b)(6) was invalid to the extent it counsels otherwise. *Id.* at 1335.

In this case, Defendant does not rely on a Congressional change in sentencing law as the basis for his motion for reduction. Instead, he relies on the Supreme Court's decision in *Booker* finding that the sentencing guidelines were advisory rather than discretionary. Defendant asserts that the distinction matters because he is not relying on statutory changes by Congress as a basis for a sentence

---

[7] The Tenth Circuit had been in the minority of the circuits and had previously held that a nonretroactive sentencing change that produced a disparity in sentencing could constitute an extraordinary and compelling reason for a sentence reduction. *See United States v. McGee*, 992 F.3d 1035, 1045–48 (10th Cir. 2021). The Supreme Court's decision in *Rutherford* abrogated this determination and concluded otherwise. *Rutherford*, 146 S. Ct. at 1335.

reduction but instead relying on legal changes from court decisions interpreting constitutional law, and thus *Rutherford's* concern is inapplicable.[8] The Court disagrees. In this case, the change from mandatory to advisory guidelines was not retroactive. The Court is hard pressed to find that the Supreme Court's explicit determination that non-retroactive Congressional sentencing changes do not qualify as an extraordinary or compelling reason for release is not equally applicable to non-retroactive case law. "The fact that [a] case involves non-retroactive precedent, as opposed to statutes, is no reason to take a different approach." *See United States v. Hunter*, 12 F.4th 555, 564 (6th Cir. 2021).

Furthermore, as noted by *Rutherford*, "nonretroactive sentencing amendments" are not personal circumstances that qualify as extraordinary and compelling reasons because they "fall well outside the heartland of compassionate release, which has long been defined by a prisoner's personal circumstances." *Rutherford*, 146 S. Ct. at 1331. Here, the Supreme Court's decision in *Booker* is not a personal circumstance that is extraordinary and compelling.

Finally, Defendant's reason does not fall within § 1B1.13(b)(5) or (b)(6). As noted above, the *Rutherford* decision clearly forecloses reliance on § 1B1.13(b)(6). With regard to § 1B1.13(b)(5), a change in the sentencing guidelines from mandatory to advisory, particularly when the guideline sentence is unchanged, is not similar in gravity to the first four circumstances listed in § 1B1.13(b)(1)-(4).

---

[8] Defendant filed a Supplement with the Court after the *Rutherford* decision. Doc. 349.

Given that Defendant's guideline sentence of life imprisonment would remain unchanged and the recent decision in *Rutherford* holding that non-retroactive sentencing changes cannot constitute an extraordinary and compelling reason, the Court finds that Defendant cannot establish an extraordinary or compelling reason for a sentence reduction based on the sentencing guidelines becoming advisory rather than mandatory.

*3. Collective Reasons*

As noted above, none of the factors, individually, constitute an extraordinary or compelling reason for compassionate release. Collectively, they also fail. Stripping away Defendant's reasons of youth/culpability and the changes in the law and sentencing guidelines, Defendant is only left with rehabilitation as the reason for a sentence reduction. And although Defendant's rehabilitation is commendable, it cannot serve as the sole basis for a sentence reduction. *See* 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13(d).

The Court recognizes that the underlying facts in this case are tragic as the individual who died was shot accidentally during a robbery by a person other than Defendant. In addition, Defendant received a lifetime sentence at a fairly young age, and he has demonstrated rehabilitation while in prison. The Court, however, is bound to follow the law, and Defendant does not present an extraordinary and compelling reason for a reduction in sentence. Because Defendant fails to present such a reason, the Court need not address the § 3553(a) factors. Accordingly, Defendant's motion is denied.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Reduce Sentence under 18 U.S.C. § 3582(c)(1)(A) (Doc. 345) is **DENIED**.

**IT IS SO ORDERED.**

Dated this 14th day of September, 2026.

s/Anthony J. Powell
ANTHONY POWELL
UNITED STATES DISTRICT JUDGE